on behalf of Tina Smith. Because there are several factual issues that I believe are still in dispute, we're asking the court to remand this case so a jury could make the decision. First thing, I'll begin with the dismissal or summary judgment of the assault and battery claims. Specifically, as to Officer Abedovic, there is an issue as to whether or not Officer Abedovic actually qualified to be a police officer. And that's because the Scantron, which he would have completed for police for exams, that Scantron is missing. So it's not known whether or not he indeed passed that exam. What does that matter though? I mean, the Kansas City police treated him as an Well, I think that would show a pattern that it would allow someone they are not sure of to actually pass the exam, it would show a pattern in policy that they really don't care whether or not the officer is indeed ready to be on the streets and addressing citizens, whether or not he's properly trained. Is there evidence that he didn't take the exam or just evidence that it that it's missing? That's concerning because then you wouldn't have the requisite training to be an officer. In addition to that, the qualified immunity that normally applied to a police officer, I don't think that that would apply to him in this case because then he would be pretty much a member of the normal citizenry that fired a gun or fired a submit. So in that case, the Well, counsel, under Missouri law, if somebody shoots at you, you can shoot back, right? Regardless of who you are. Yes. So getting off of the qualifications, go to the fact that who shot first? Well, in the in the it's alleged officer is alleging that Smith shot shot at him. We're at summary judgment. So what do we have to go on? Well, the the district court concluded that there was facts that contradict officer. So, yeah. However, if we look at the dash cam footage, and that footage showed officer actually walking beside Mr. Smith, it doesn't give the video doesn't account for any of the statements that officers can include. From video that their description of events actually happen and the way they got around that is by simply stating, well, man, the court said the video was too grainy. And so that's applicable in this case. However, if you look at man, that video was shot at night. And in this video, we could clearly see officer walking beside Smith. One of the accounts that he gave was that Smith had a weapon under his left arm pointed at him. And we see no account of that. Well, one of the problems I'm having with that, I've watched the video three, four or five times now at least, and you can't really see anything. But what you can see, there's a couple of things. There's first of all, you can hear him. The officers repeatedly say, gun, gun. He has a gun. I mean, that must have come up four or five, six times over the course of a, you know, 45 seconds of the video. The second thing is you hear two series of shots. You hear an initial shot that sounds different from the three successive shots that clearly came from the officer. And so while you can't see the gun, it seems to, there doesn't seem to be a genuine issue that somebody else fired. And at least the officers believed, believed he had a gun. In other words, they're not, in the heat of the moment, they're not going to make up he has a gun, I don't think, and then shoot him. Maybe that's your argument. I don't know. But what do we do with that, given that we don't really know from the video exactly what happened? But to the extent we do, it looks like your client had a gun. Well, in that scenario, I would say that's part of the reason why the district court should not that Mr. Smith, in fact, fired Officer Vidavic because you can't tell that maybe a jury should make that decision. Counsel, what was the record proof as to the actual existence of a gun? Was there a gun found? Were there ballistic tests done on the gun? I don't recall reading any of that kind of information. What is the record on it? There was a, there was a gun that was found on the scene. There was a ballistic testing done, showed that the gun was proper. However, there was no finger printing done because it's my understanding that the defense counsel handled the weapon. So they're claiming that they couldn't test it for finger printing. And this gun was found in proximity to the shooting? Yes. Was there proof or evidence that it had been fired? Well, I think they had done some testing on Mr. Smith to see if there was any gunpowder residue that was done by the Missouri Highway Patrol and the results that came back seemed to indicate that the only, there wasn't any. The only conclusion that they could come, there was some on his clothes and they seem to suggest that that's from him actually being shot, not firing. Now, the district court doesn't make any findings on those points, right? Does the district court mention anything about there being a gun? I don't, I don't believe, um, there was a, there was a conclusion as to whether or not there was an actual weapon. I think the question was whether or not Mr. Smith actually fired an officer or whether or not he had actually attempted to shoot Officer Crute. When you get through the district court's fact, there's nothing right? There's nothing about a gun that could be traced to Mr. Smith, right? Or not? Right. It doesn't, it doesn't make any, any determination about whether or not there's a weapon. Well, in the magistrate's order though, and on paragraph 18, and maybe this doesn't quite get you there, while pursuing Mr. Smith, Officer Abedovic, I hope I pronounced that right, saw a gun in his right hand. So there is something linking the gun to, to Smith, is my understanding. Yes, yes, I would agree with that because the affidavits do tend to say that they saw him. No. So is it the appellant's position that there was no gun or that there was a gun but it was never fired or pointed threateningly at an officer? I think that the second part would be correct. The position is that it's inconclusive whether or not Smith fired a weapon at Abedovic first, first instance. As we previously discussed, it's difficult to tell from the video and that's pretty much all we have. With respect to Officer Kruger, he has three separate conditions as to what happened. There is a, what they call an officer's synopsis, which he gave right after the shooting. Then his deposition, he seems to suggest that what he said in that synopsis was simply not true. And then after the, the depositions, then they create an affidavit which was used as part of the summary judgment. So that has its own separate set of facts. So we have three different stories from Officer Kruger. The, from his dash cam footage, we can see him coming down the street. And Smith's back definitely turned towards him. And before his car comes to a complete stop, starts firing. So his story is that he thought that Officer Abedovic and the other officers were shot and killed. Well, in his affidavit, he seems to tell the story that he was listening to the helicopter pilot and other officers on the ground. And at no point in time did anyone ever say that, you know, there was officer down, officer shot. So it's kind of incomprehensible why he would come to that conclusion when none of that was ever broadcast. I'm going to ask a direct question. And I wonder whether on summary judgment, remember, we're talking about evidence. We're not talking about the allegations. And so I wonder if it's a problem for your client that there's none of the evidence that maybe the chief had talked about, which is, was it your burden to come forward with evidence that maybe somebody else's fingerprints were on the gun, not your clients? Was it your burden to come forward with evidence that there was no gunshot residue on his hand to show that the gun had never been fired? In other words, is it enough? I'm having trouble concluding that it's enough to simply say, well, the video is not that clear. You have some affirmative obligation to come forward with proof. Well, that was not included as part of our answer to the summary judgment. And the hope was that we would have gotten to a trial where we could have presented those reports. And also, in addition to that, we have the statements of the helicopter. Those are, those are weaknesses that we call the summary judgment because we're pretty much denied the opportunity. But weaknesses are not enough. The absence of evidence could be fatal to your claim. I mean, it's one thing if your summary judgment motion says they failed to prove an element because there's no evidence from the other side on this particular, or they, you know, they didn't disprove, disprove that. As a plaintiff, you've got to come forward with something and show that, I think, that there wasn't a gun or something of that nature. Or else there's not a genuine issue of material fact. Well, not as to whether or not there was a gun on the scene. But there are still questions as to whether or not Smith actually pointed a weapon at We know at the time that Officer Kruger shot Smith, the helicopter pilot in his report stated that there was no gunfire from Smith and he did not say that Smith was pointing a gun. He simply said that, in fact, Officer Kruger was standing outside his patrol car and he said that Smith was down. That was about it. Times was Smith's shot. I think Officer Kruger shot him five times. And I know that Officer Avitovich fired. And that's also an issue with regards to wounds because there are wounds from the rear of his body, which could suggest that some of the rounds from Officer Kruger probably wasn't on the front. The record doesn't reflect the wounds and the entry angle of the wounds, right, at this point? The district court doesn't mention that? The district court doesn't talk, doesn't speak about that. The complaint mentions the point of impact and I believe some of the depositions. Mr. Anderson, you're in your rebuttal. You can continue, if you like, or reserve the remainder. Noticed either. Ms. Peters. Please support Diane Peters on behalf of the defendants in this case. I want to address a couple of issues. There was a gun found on the scene, as was mentioned earlier. Counsel, that's not the district court's record, is it? It's not in the district court's opinion, but it is in the record. Okay, okay. It is in the record and I can point to you in several places where that's in the record. Okay. Was that in your brief, counsel? I believe so, right? That is not in my brief. You better do a 28-J on that because I was led to the opposite impression between the district court and your briefs. Go ahead. Okay. So there is in the record on the air tape on Appley 1, which is the air tape dispatch radio, we hear at 9-10, one of the officers say we got a gun here also. The paramedic that testified here and her deposition is at page 98. She got there within about five minutes and she testified that she saw a gun at the scene next to the body in the same location where the officer testified. And what's your view of the state of the record on any forensics done on that weapon? There's nothing in the record on ballistics. There's nothing in the record about a shell casing. There's nothing in the record about GSR before the court. I and what counsel was referring to earlier, I have no memory of that. I can tell you that there was a shell casing found. Does the record show that any of that kind of testing was ever done or requested? Your Honor, not that I recall. I recall and I agree with counsel that the gun that was found that allegedly Mr. Smith had was tested and it showed that it functioned. There was also a shell casing found that matched that gun that Mr. Smith had and that shell casing was found near the fence where Mr. Smith was going over. But that's not in the record before you where the shell casing was found. It's not. None of the testing is in the record before you either. So when you move for summary judgment, you didn't mention any of that stuff? I didn't and I didn't think that there was a need to, Your Honor. I thought it was really straightforward on the audio and the video. Well, I happen to disagree on the video. It is certainly not. It's certainly not indisputable as to what occurred. What is not clear on the video is what Mr. Smith had in his hand. And isn't that the crucial thing? And that is the crucial thing here. But it's not clear because the video is really grainy and because of the quality of the video. That's the issue here. But if you look at the video and if you look at the audio as a whole, it fits with what the officers have said in their deposition what happened. What about the differing versions of a bit of it where there's tells that his facts differ a bit in different recitations? I think there are not any differences with respect to officer a bit of it. I think what council was referring to Kruger. Okay, yeah, I'm sorry. And he gave three, according to counsel, three different versions. He gave a statement to detectives on the day after the shooting. He then gave a deposition testimony in this case. The only difference here, and it is not material to this case whatsoever, is when he initially talked to detectives, he told them that he's when he pulled up in the car with officer Taylor, that he saw officers a bit of it and officer Keller chasing Mr. Smith. Well, in his deposition, he explained that he actually didn't see that he assumed that that happened based on listening to the audio. He heard that it was a helicopter overhead. He knew there was a foot chase going on, and he assumed that that occurred. Regardless, that's not material to this case, not to the outcome of this case, your honor. Whose responsibility was getting the forensic evidence? That's one of the things I'm struggling with. If there was a responsibility, was it the plaintiff's responsibility because they had to prove their case? Was it the defense's responsibility because the video was grainy and we couldn't tell who had the gun and where and when? I mean, whose responsibility was it in your view? In my view, it's the plaintiff's responsibility here. If that, in fact, is what he wanted, he could have simply asked for it. Whatever was in the file he had, if he wanted any additional information, he certainly could have asked for it. In our view, in the defendant's view, we had sufficient evidence to prove our case, and that was it, the audio and the video and the officer's statement to conclusively show that the use of force here was reasonable. I wanted to go back, if I may, Judge, to the issue of Officer Bidovic's license. I do want to mention that and refer you to page 146, which is Officer Bidovic's deposition testimony of the record. There is no evidence that he didn't pass a test or that he didn't take a test. The only evidence in the record is a question, a leading question in his deposition that asked, and I'm paraphrasing, from page 146. If you have it in front of you, don't paraphrase. If you don't have it, if you don't have it, don't beat your brains out. Go ahead. Are you aware that you didn't pass the test? The officer's response was, I don't know what you're talking about. I was told that I passed the test. I've been a police officer for X number of years. And that was... No yes in there anywhere? There's no yes in there anywhere. No partly? There's no partly. Okay, thank you. It's pure speculation. And I want to talk just briefly about, refer to what it sounded like counsel is conceding the fact that there was a gun on the scene now. It's what I believe that I heard him saying a few minutes ago. And if that's the case, I just wanted to point out that the witness statements that he's referring to, which are hearsay, are irrelevant now. Well now irrelevant, I noticed the district court uses that word. Irrelevant is not quite right, correct? Relevance is pretty broad. That is broad. Okay, so do better. Your honor... You think they're immaterial or something? What do you think they really are? Well, first of all, they're hearsay. They're hearsay. All of them are hearsay. One of them is double hearsay. And the fourth one... Well, of course now all that the all the defending party has to do to point to evidence in the record, you know, they're pointing to statements these people made to public officials. Are you sure that you can so easily say they're hearsay? Yes, I think so, your honor. It's hearsay under rule 56. And it was the plaintiff's burden to show some exception to the hearsay rule. Yeah, but we have cases that say the question at summary judgment is not whether it is admissible right then, whether it could be presented trial in admissible form. Gannon International, we got a couple others. Well, your honor... So I'm saying you need to halfway face them. I'm sorry, your honor. You need to halfway face the witness statements. Do you want to discuss the witness statements? I'll ask it that way. I don't think they're even material at this point, given what counsel said earlier. Thank you. Um, I don't believe I have anything further if there are any questions, your honor. Okay, what what is your position, the state's position, defending the police, the defendant's position? What is your position on who shot first? It's the state's position that Mr. Smith shot first. I'll refer back. Okay, okay. And what what's what how do you what do you piece together to say that? It's on the patrol car video. It's officer officer's bit of it and Keller's patrol car video. You can hear a single gunshot. And you cannot see where that gunshot's coming from. But directly before you hear that gunshot, you do see Mr. Smith running through that parking. And you see him going over towards the fence. And then you hear that single gunshot. And then you see, you do see officer a bit of a fire. He's gone. And and hear him fire three times in the direction. How do you know the first one is not the same as the last three? Well, it sounds differently. The timing is differently. And your honor, you don't there's no evidence that there was anyone in that parking lot other than Mr. Smith and the two police officers, officer a bit of it and officer Keller. And we can see officer a bit of it. And we know that it wasn't him that shot that first shot. We do not see him discharge his firearm when that first shot goes off. What we see him do. And I think this is a really important. We see him duck down and try to take cover. And then he moves behind a garage there indicating that shot at. Um, so thank you. Does Kansas City have a municipal policy against the use of excessive force? Yes, your honor, there is a policy. It's not in the record here. But what does that policy provide as to the use of deadly force? The policy mirrors Graham B. His life or someone else's life, he's or she is allowed to use deadly force. So what's Kruger's position or what what are the facts that he states that indicate immediate danger to himself or to someone else? Very simple. Judge Smith, he pulls up his vehicle in about three seconds. He sees plaintiff, excuse me, ceased standing at a fence with a gun in his hand. And the decedent raises the gun up in his direction and officer Kruger responds by firing. And he stops firing when he sees starting to fall back. On the on the number of times that he was shot, opposing counsel, I think, mentioned five times that there were, you know, that that's the number of times that Smith was hit. I didn't find that in the record. I did find the total, I believe, of eight shots fired. But I didn't find the number of times he was hit and which ones, whether it's the initial three or the later five or whatever. Is there anything in the record that you can point me to or is it just completely unclear? That's not in the record. Okay. How many times he actually was shot is not in the record. It says shot at him five times. Yes. Officer Kruger shot at Smith five times as the district court's finding. And that's the end of the finding, right? That's the entirety of the finding. And I would add that Officer Bedevic shot at him three times. Right. A total of eight. But there's nothing in the record how many times he struck. And is there anything to indicate which officers' bullets actually struck Smith? Not directly, Your Honor, but certainly indirectly. I mean, Officer Bedevic shot at him three times and he continued running. And that's certainly undisputed. And then Officer Kruger shoots at him five times and he falls back and dies right there. So indirectly, it would be that it was Officer Kruger at least that struck him. If there's nothing further, I appreciate it. Thank you, Ms. Peters. Mr. Anderson, I'll give you a full minute to respond. Briefly, following Mr. Smith's, the killing of Mr. Smith, the police department did enact a policy, de-escalation policy. And in fact, Officer Kruger, in that position, testified that I think he had gone over. With regards to the weapon, again, we were going to test the weapon for DNA and fingerprinting. But we were told that counsel had handled the weapon, so it wouldn't make difference as far as the results were concerned. They have all the evidence, so there's also a chain of custody issue. Did they really have an open file policy with you? She implied there's an open file policy where you can look at everything they got, these statements and this stuff? If they did, the honest truth is I wasn't aware. I would admit that I did see the original report. It sounds to me, though, that your proper recourse might have been like a spoliation motion of some sorts, which is to say that we really wanted to test this, but the evidence was spoiled. And we couldn't test it because they had not used proper procedures in terms of, I mean, based on what you're describing. That's correct, Judge. And I think what I pressed all the bombs on was that we were going to be able to tell make the case to a jury, in fact, ask counsel to testify that it was a fact. Also, indeed, the fact that she mentioned that the Scantron, as far as Mr. Bieleveld, was completely missing, and they could not verify what it was. Thank you, Mr. Anderson. The court wishes to thank both counsel for coming today and providing argument to the case with understanding the legal issues in this matter. We will take the case under advisement and render a decision in due course. Thank you.